IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CYRUS JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-cv-3592 |
| | § | |
| WHARTON COUNTY JUNIOR COLLEGE, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Cyrus Johnson ("Plaintiff" or "Dr. Johnson") files this Original Complaint against Wharton County Junior College ("Defendant" or "WCJC").

**SUMMARY**

1. Dr. Johnson served as the Director of Adult Education and Literacy for Defendant Wharton County Junior College.

2. Dr. Johnson was discriminated against on the basis of his race (black) and gender (male) when he was terminated and replaced with Taraneh Zekevat (non-black female), an employee who previously worked under Dr. Johnson.

3. Defendant's articulated reasons for the termination of Dr. Johnson are pretextual.

4. Dr. Johnson was terminated in violation of Title VII of the Civil Rights Act of 1964.

**THE PARTIES AND JURISDICTION**

5. Plaintiff Cyrus Johnson is a natural person residing within the confines of the Southern District of Texas, Houston Division. Dr. Johnson has standing to file this lawsuit.

6. Defendant Wharton County Junior College is a taxpayer-supported higher education institution located within the confines of the Southern District of Texas, Houston Division.

7. Defendant may be served with this Complaint through their counsel, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, TX 77002.

8. The Court has personal jurisdiction over Defendant based on general jurisdiction.

9. The Court has subject matter jurisdiction over this case based on federal question jurisdiction under Title VII of the Civil Rights Act.

10. Venue is appropriate in the Southern District of Texas, Houston Division, because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district.

**FACTUAL BACKGROUND**

11. Dr. Johnson, a black male, began employment as Director of Adult Education and Literacy ("AEL") at Wharton County Junior College in 2014. He was the only African American director at WCJC and the only director with an education doctorate.

12. A committee selected Dr. Johnson for the position over another candidate named Taraneh Zekavat ("Ms. Zekavat"). Ms. Zekavat was hired as an Instructional Supervisor in Dr. Johnson's department. Ms. Zekavat resigned from that position in December 2015.

13. The Vice President of Instruction, Leigh Ann Collins, preferred Ms. Zekavat to Dr. Johnson for the position of AEL Director. During one interaction, Ms. Collins instructed Dr. Johnson to treat Ms. Zekavat differently because she was a single mother.

14. In July 2016, Ms. Collins presented Dr. Johnson with material suggesting that he didn't follow college policies regarding approval for a t-shirt purchase order. The same day, Dr.

Johnson provided her with documentation proving that the t-shirt purchase was authorized by the funding source.

15. In July 2016, Dr. Johnson was informed that his employment as Director of AEL was not going to be continued, even though he secured funding for the upcoming school year, met and exceeded target goals, and had positive reviews from Ms. Collins and the state. Dr. Johnson was not allowed to complete the remainder of his contract term, which was scheduled to end on August 31, 2016.

16. His now vacant position as Director of AEL was not advertised. Instead, he was replaced with Ms. Zekavat (non-black female) before his contract term concluded.

17. The termination of Dr. Johnson and hiring of Ms. Zekavat deviated from Defendant's customary practices. *See, e.g.,* Exhibit 1, Affidavit of Micheal Crouch.

18. Ms. Zekavat was not more qualified or more merited than Dr. Johnson for the position of Director of AEL. *See, e.g.,* Exhibit 2, Affidavit of Yvette Alexander.

19. On September 22, 2016, Dr. Johnson executed a sworn Charge of Discrimination with the United States Equal Employment Opportunity Commission alleging discrimination on the basis of race and sex. He now brings this lawsuit to attempt to clear his name and reputation and to obtain redress for his legal grievances.

## TITLE VII CLAIMS OF RACE AND SEX DISCRIMINATION

### A. Legal Standards

20. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

21. Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

22. Discrimination can be established through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

23. Where the plaintiff has not presented direct summary judgment evidence of discrimination, courts apply the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the framework, to establish a *prima facie* case of race discrimination in a termination case, a plaintiff must show that: "(1) the plaintiff is a member of a protected group; (2) the plaintiff was qualified for the job that was held; (3) the plaintiff was discharged; and (4) after the employer discharged the plaintiff, the employer filled the position with a person who is not a member of a protected group." *Black v. Pan Am. Labs., LLC*, 646 F.3d 254, 259 (5th Cir. 2011) (quoting *Valdez v. San Antonio Chamber of Commerce*, 974 F.2d 592, 596 (5th Cir. 1992)). Alternatively, in the case of disparate treatment, the plaintiff may satisfy the last element by showing that others similarly situated were treated more favorably. *See Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).

24. After the plaintiff establishes a *prima facie* case, the burden shifts to the employer to show a legitimate, non-retaliatory reason for the adverse employment action. *Black*, 646 F.3d at 259; *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

25. The burden then shifts back to the plaintiff to show either: "(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Black*, 646 F.3d at 259 (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)) (alteration in original).

26. All conditions precedent to this suit have been fulfilled.

**B. Analysis**

27. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

28. Dr. Johnson was the only African American director at WCJC and the only director with an education doctorate.

29. Dr. Johnson was replaced by Taraneh Zekavat, a non-black female. All of the individuals involved in the relevant decision-making process were also non-black females: Leigh Ann Collins, Vice President of Instruction; Judy Jones, Director of Human Resources; and Betty McCrohan, President.

30. In July 2016, Ms. Collins presented Dr. Johnson with material suggesting that he didn't follow college policies regarding approval for a t-shirt purchase order. Dr. Johnson can demonstrate that the articulated reason for his termination is pretextual, namely by showing that on the same day, he provided Ms. Collins with documentation proving that the t-shirt purchase was authorized by the funding source.

31. Dr. Johnson can demonstrate that his termination and the hiring of Ms. Zekavat deviated from Defendant's customary practices. *See, e.g.,* Exhibit 1, Affidavit of Micheal Crouch.

32. Dr. Johnson can demonstrate that Ms. Zekavat was not more qualified or more merited than he was for the position of Director of AEL. *See, e.g.,* Exhibit 2, Affidavit of Yvette Alexander.

**C. Damages**

33. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

34. Plaintiffs who prevail in a Title VII discrimination claim are entitled to back pay. The purpose of back pay is to "make whole the injured party by placing that individual in the position he or she would have been in but for the discrimination." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988).

35. Prevailing plaintiffs are also entitled to reinstatement as an equitable remedy. *See Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir. 1992). If reinstatement is not feasible, front pay will be awarded in a manner consistent with the remedial purposes of the law. *See Brunnemann v. Terra Int'l Inc.*, 975 F.2d 175, 180 (5th Cir. 1992). Unlike back pay, front pay refers to future lost earnings. Front pay awards can be substantial. *See, e.g.*, *Jackson v. Host Intern., Inc.*, Nos. 09–51137, 10–50026, 2011 WL 2119644, at *8-9 (5th Cir. Feb. 1, 2011) (Fifth Circuit decision affirming five-year front-pay award in a discrimination case); *Mota v. University of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 527 (5th Cir. 2001) (affirming front-pay award of approximately ten years).

36. Prevailing plaintiffs are entitled to compensatory and punitive damages under Title VII. *See* 42 U.S.C. § 1981A(a)(1).

37. Prevailing plaintiffs are also entitled to attorneys' fees and costs and Dr. Johnson seeks to recoup these amounts.

## JURY DEMAND

38. Plaintiff demands a jury trial.

## DAMAGES AND PRAYER

Plaintiff asks that he be awarded a judgment against Defendant for the following:

a. Actual damages in the amount of lost back pay, lost benefits, and other economic losses;

b. Reinstatement or front-pay;

c. Compensatory damages;

d. Punitive damages;

e. Prejudgment and post-judgment interest;

f. Court costs;

g. Attorney's fees; and

h. All other relief to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Ahad Khan
Ahad Khan
Texas Bar No. 24092624
S.D. Texas ID No. 2981398
712 Main Street, Suite 900
Houston, TX 77002
(713) 401-3558 – Telephone
ak@ahadkhanlaw.com – Email

ATTORNEY FOR PLAINTIFF
CYRUS JOHNSON